261 So.2d 12

**Walter F. COXE, Individually and on Behalf of Others Similarly Situated**

v.

**The WATER WORKS BOARD OF the CITY OF BIRMINGHAM, a Public Corporation, et al.**

**6 Div. 909.**

Supreme Court of Alabama.

April 13, 1972.

E. T. Brown, Jr., L. Vastine Stabler, Jr., Birmingham, for appellee Water Works Board of City of Birmingham.

Foster Etheredge, John P. McKleroy, Jr., Birmingham, for appellee Johnson-Rast & Hays Co.

Jerome A. Cooper, William E. Mitch, Birmingham, for appellant.

**334**

David J. Vann, Birmingham, amicus curiae, for Birmingham Audubon Society, William J. Baxley, Atty. Gen., State of Alabama, amicus curiae.

BLOODWORTH, Justice.

This is an action for a declaratory judgment, injunction, and general equitable relief which comes to us on appeal from a final decree of the Jefferson County circuit court, in equity, denying the relief sought and dismissing the bill of complaint.

Appellant, complainant below, is a citizen and taxpayer of Birmingham, Alabama, who sues on behalf of himself and other members of the public similarly situ-

ated. Appellees are the Water Works Board of the City of Birmingham and Johnson-Rast & Hays Company, a real estate development corporation.

The controversy in this case centers around an eighty-acre tract of land owned by the Water Works Board. The land is situated along both sides of the Cahaba River in Jefferson and Shelby Counties, forty acres being located in each county. It has been known as the "Camp Horner" property. In 1970, the Water Works Board conveyed this tract to appellee Johnson-Rast & Hays Company in consideration of a cash payment and execution of a purchase money mortgage. This suit was then filed.

The bill of complaint, as last amended, alleges as follows:

"* * * that for more than fifty years the said property has been used by the public generally as a park for picnicking, swimming, camping and other outdoor recreation.

"* * * that said property has been and was at the time of said purported sale, and is now subject to a common law dedication for use by the public as a park. As such it was and is beyond any power of said Water Works Board to convey to a private individual or company as has been attempted in the above described purported sale.

"* * * that * * * the attempted sale by the Board to the Developers was part of a scheme or device by which said other private individuals or interests, in concert with respondents are attempting to destroy the common law dedication of said property for use by the public as a park, which destruction is threatened and will be accomplished unless restrained by order of this Court."

There are two principal issues presented on this appeal. The first is whether the trial court erred in failing to declare the

property in question to have been dedicated to the public use as a park by a common law dedication. The second issue is whether the trial court erred in failing to find that the Water Works Board acted beyond its statutory authority in conveying this property in a credit transaction. We have concluded that both rulings were correct and that the decree of the trial court should be affirmed.

The necessary elements of common law dedication are well established in our case law.

"* * * To constitute a dedication there must of course be an *intention* of the owner to dedicate the property and an *acceptance* by the public or by some authorized person or body of persons acting in its behalf. * * *" [Our emphasis] Smith v. City of Dothan, 211 Ala. 338, 100 So. 501 (1924).

With regard to the requirement of acceptance by the public, the evidence in this case may be somewhat equivocal. However, we do not find it necessary to consider the sufficiency of the evidence with regard to this element as we have concluded that there is clearly a failure of proof with regard to the other necessary element—intention of the owner to dedicate. The record reveals no evidence of such intention on the part of the Water Works Board. To the contrary, there is evidence of numerous acts on the part of the Board which clearly negates any intention on the part of the Board to dedicate this property to the public.

The evidence is undisputed that the Water Works Board leased this property from 1933 to 1952 to the Birmingham Boys Club; leased it from 1960 to 1968 to St. Luke's Episcopal Church; evicted the caretaker of the lessee and removed the lessee's buildings, after cancellation of this lease; paid an annual sum to five surrounding municipalities in lieu of taxes; mortgaged the property, the last mortgage being recorded in 1951; granted a right of way to Jefferson County to put a road through the property; granted an easement for power lines to Alabama Power Company; paid $1,000 to have buildings left by the Boys Club, removed; sold timber off the land; barricaded some of the roads entering the property; posted the property; and, carried the land as an asset in its annual report. In addition, the undisputed testimony of Mr. Thomas H. Collins, General Manager of the Water Works Board, was that there was nothing in the files of the Board to indicate an intention to dedicate; that he had no personal knowledge of such an intention, and that neither he, nor anyone on the Board, knew the property was being used as a public park.

This court has held that,

"* * * the burden, of proving a dedication rests upon the party asserting it. * * *" Witherall v. Strane, 265 Ala. 218, 90 So.2d 251 (1956).

This court has also said that in order to carry this burden the intention of the owner to dedicate must be affirmatively established by unequivocal evidence.

"To establish a dedication, the clearest intention on the part of the owner to that effect must be shown, and the evidence must be clear and cogent, and the acts of the owner relied on to establish a dedication must be unequivocal in their indication of the owner's intention to create a public right exclusive of his own. Witherall v. Strane, supra; Smith v. City of Dothan, 211 Ala. 338, 100 So. 501." O'Rorke v. City of Homewood, 286 Ala. 99, 237 So.2d 487 (1970).

As we have already indicated, we must conclude that appellant has not borne the burden of proof to show an intention by the Board to dedicate this property.

Appellant, however, asks that we modify the requirements for dedication, as established by the previous decisions of this court, and adopt what he characterizes as being a "new trend." Appellant cites to us the California case of Gion v. City of Santa Cruz, 84 Cal.Rptr. 162, 465 P.2d 50

(1970), as providing a precedent which this court might follow in relaxing our requirements with regard to the intention of the owner to dedicate. The following is a quotation from that decision:

"In our most recent discussion of common-law dedication, Union Transp. Co. v. Sacramento County (1954) 42 Cal.2d 235, 240–241, 267 P.2d 10, we noted that a common-law dedication of property to the public can be proved either by showing acquiescence of the owner in use of the land under circumstances that negate the idea that the use is under a license or by establishing open and continuous use by the public for the prescriptive period. When dedication by acquiescence for a period of less than five years is claimed, the owner's actual consent to the dedication must be proved. The owner's intent is the crucial factor. (42 Cal.2d at p. 241, 267 P.2d 10, quoting from Schwerdtle v. County of Placer (1895) 108 Cal. 589, 593, 41 P. 448.) When, on the other hand, a litigant seeks to prove dedication by adverse use, the inquiry shifts from the intent and activities of the owner to those of the public. The question then is whether the public has used the land 'for a period of more than five years with full knowledge of the owner, without asking or receiving permission to do so and without objection being made by any one.' (42 Cal.2d at p. 240, 267 P.2d at p. 13, quoting from Hare v. Craig (1929) 206 Cal. 753, 757, 276 P. 336.) As other cases have stated, the question is whether the public has engaged in 'long-continued adverse use' of the land sufficient to raise the 'conclusive and undisputable presumption of knowledge and acquiescence, while at the same time it negatives the idea of a mere license.' (42 Cal.2d at p. 241, 267 P.2d at p. 13, quoting from Schwerdtle v. County of Placer, supra, 108 Cal. 589, 593, 41 P. 448.)"

We will not attempt to discuss at any length the merits of California law with regard to dedication. We think it suffi-cient to say that the essential elements of common law dedication have been settled in Alabama case law for over 100 years, and we do not find that appellant has presented to us any compelling reason to alter such long existing and well established law. We will say, however, that even if we followed the principles enunciated in *Gion*, supra, there is a real question as to its applicability to the instant case, since the *Gion* case rested, in part, on compliance with a five-year prescriptive period, which we do not have in Alabama. There would also remain the question as to whether the instant case meets the standard set by *Gion*, which requires public use " * * * for a period of more than five years with full knowledge of the owner, without asking or receiving permission to do so * * *." In the instant case, the undisputed testimony of Mr. Collins was that neither he nor any member of the Water Works Board knew the property was being used as a park by the public. There was also testimony to the effect that appellant usually asked permission before coming on the property.

We must thus conclude that appellant has failed to prove a common law dedication of the property in question.

The other question before this court is whether the Water Works Board has authority to sell this property in a credit transaction. By terms of the deed, the Water Works Board conveyed the property to Johnson-Rast & Hays Company " * * * in consideration of Fifty Thousand no/100 ($50,000.00) Dollars and the execution simultaneously herewith of a purchase money mortgage securing One Hundred Seventy Two Thousand Five Hundred and no/100 ($172,500.00) Dollars to the undersigned grantor * * *." The mortgage itself was not introduced into evidence, but the testimony of Mr. Collins established that, by the terms of the mortgage, the balance was to be paid in equal annual installments over a five-year period with interest at 8% per annum.

Appellant contends that the Water Works Board, as a public corporation, is an arm of the City of Birmingham and a subdivision of the State, and that Article 4, Section 94, Alabama Constitution 1901, prohibits such subdivision of the State from engaging in any transaction which involves an extension of credit to any individual, association or corporation. The provisions of Article 4, Section 94, are as follows:

"Sec. 94. The legislature shall not have power to authorize any county, city, town, or other subdivision of this state to lend its credit, or to grant public money or thing of value in aid of, or to any individual, association, or corporation whatsoever, or to become a stockholder in any such corporation, association, or company, by issuing bonds or otherwise."

■ We cannot agree with appellant's contention that the Water Works Board is a subdivision of the State, within the meaning of Section 94. Title 37, §§ 394–402(1), Code of Alabama 1940, provides for the creation of Water Works and Sewer Boards. Under this statute, a public corporation is created for the purpose of operating a water works plant and system. The parties agree the Board was organized under this statute. Such public corporation is given broad powers, including the power to dispose of its property, borrow money, mortgage its property, and pledge revenues. It would seem that one of the objectives in the creation of such a public corporation is to establish an entity separate from the city whose financial obligations would not become burdens on the city's fiscal resources.

In Taxpayers & Citizens, etc. v. Board of Water & S. Com'rs of City of Mobile, 261 Ala. 110, 73 So.2d 97 (1954), there was a question raised as to the constitutionality of the Mobile Water Works Board's pledging its water revenues as security for bonds issued by the Board. This court specifically held that the Water Works Board was not subject to the constitutional limitations of § 94, viz:

"Another contention is that it violates section 94 of the Constitution for the board to pledge its water revenues to secure obligations incurred to obtain funds to enlarge the sewer system. *But section 94 applies only to the power of a city to grant its funds or lend its credit to a private corporation. That is not the status of the water and sewer board.* * * *" [Emphasis supplied]

Moreover, in Opinion of the Justices, *254 Ala. 506, 49 So.2d 175 (1950)*, the justices were of the opinion that various public corporations, including water works boards were not subdivisions of either state, city or county, and there said:

"It is well established by the decisions of this court that a public corporation is a separate entity from the state and from any local political subdivision, including a city or county, within which it is organized. This court has often held that the debts of a public corporation or quasi-corporation are not debts against the state within the meaning of § 213, as amended, of the Constitution of Alabama and do not constitute indebtedness of a county or municipality within the meaning of §§ 224 and 225, respectively, of the Constitution of Alabama.

"Among the public corporations and quasi-corporations whose debts have been held not to constitute debts of the applicable political entity (whether state, county or municipality), within the meaning of constitutional debt limitations are the following: * * * and *Water Works Boards.*" [Emphasis supplied]

We conclude that the Water Works Board is not a subdivision of either the City of Birmingham or the State of Alabama, and therefore does not come within the limitations imposed by Article 4, § 94.

**338**

Appellant also makes the argument that even if Article 4, § 94, does not prohibit such a transaction, the Board still possesses only such powers as are specifically granted by statute, and there is no statutory authorization for sale of this property on credit.

We find no merit in this contention. Title 37, § 398, Code of Alabama 1940, sets forth the various powers of the Water Works Board. That section provides, in part, as follows:

"§ 398. Powers of corporation; property and income tax exempt.—Each corporation formed under this article shall have the following powers together with all powers incidental thereto or necessary to the discharge thereof in corporate form: * * * to lease, exchange, sell, convey and otherwise dispose of its real, personal and mixed property by any form of legal conveyance or transfer; * * * . * * * *"

This court is of the opinion that the above enumerated powers authorizing the Water Works Board to sell its real property "by any form of legal conveyance or transfer" is a sufficient authorization for the type of transaction here in question.

We feel we might make one final observation in view of certain references contained in appellant's brief. Appellant concludes his arguments by appealing to the overriding public interest in seeking to conserve, at all costs, our nation's dwindling natural resources, wild life habitats, and wilderness areas. As he so poetically expresses his views:

"Along the quiet Cahaba, where great trees stand, and flowers grow, and increasingly rare birds sing, nature is going about its work as the Creator laid the plans. Our failure to save this symbolic and unique piece of beautiful land —for our posterity—may well be a symbolic warning that we cannot save ourselves."

While members of this court, as individuals, may feel acutely aware of, and sympathetic with, these concerns which appellant expresses, we are bound to apply the law as we interpret it to the facts of the case as we understand them.

Accordingly, the decree of the trial court is due to be, and is hereby, affirmed.

Affirmed

HEFLIN, C. J., and COLEMAN, MADDOX and McCALL, JJ., concur.