218 So.2d 273

**CITY OF FAIRFIELD**

**v.**

**Robert JEMISON, Jr., et al.**

**6 Div. 569.**

Supreme Court of Alabama.

Jan. 16, 1969.

Frank B. Parsons, Fairfield, for appellant.

Robt. Jemison, and others, pro se.

HARWOOD, Justice.

In May 1966, the Council of the City of Fairfield passed a resolution authorizing the Fairfield Chamber of Commerce to have paved the Plaza in downtown Fairfield, at no expense to the City of Fairfield.

The question of the validity of the Council's action having arisen, the City of Fairfield brought a declaratory action to have the question determined.

Named as respondents were Robert Jemison, Jr., as representative of the owners of any property of the Fairfield Land Company at the time of its dissolution, and Joseph J. Trucks, and Henry Hardy, as representatives of those residents of the City of Fairfield who oppose changing the use of the Plaza as contemplated by the resolution above mentioned.

On 21 March 1912, the Corey Land Company, of which Mr. Jemison was president, had recorded in the Probate Office of Jefferson County a properly notarized map or plat of the subdivision of Corey. The name of Corey was shortly changed to Fairfield, and the Corey Land Company likewise changed its name to Fairfield Land Company. The map or plat of Corey is the plat of the present City of Fairfield.

The platted area is divided into numbered lots and designated streets. Block 42 is not divided into lots and on the map is designated as "The Plaza."

Mr. Jemison testified that the land company "developed at the expense of the company the Plaza as a feature and a point of interest in the downtown section of Fairfield where the public would have a place to assemble and where public meetings could be held and where people could get on and off busses and have a place in the center to assemble. And we could have made more money for our stockholders by not going to the expense of developing the Plaza."

In response to a question by the attorney for the appellant, Mr. Jemison further testified that the word "Plaza" was used on the theory that "Plaza" or "Park" * * * "either one is a public space and is a dedication of that space to the public."

The bill of complaint asserts that:

"The Plaza is bordered on the North by a street designated as 'North Plaza,' on the East by Cernegie (sic) Avenue, on the South by a street designated 'South Plaza,' and on the West by Gary Avenue. When the City of Fairfield (Corey) was laid out, the Plaza was improved by walkways, trees, and a semi-circular bench of brickwork including a small fountain and bowl." (Par. ours.)

Mr. Trucks, a resident of Fairfield since 1920, testified that to his knowledge the Plaza, or Plaza Park, or the Park, as he sometimes referred to it, had during the years, not necessarily continuously, been used as follows: (a) benches at times had been placed in the area; (b) country fairs of a few days' duration were held there; (c) skaters used the walks; (d) Christmas trees and nativity scenes were created thereon during the Christmas season; (e) band concerts about twice a month throughout the summer months, were held and a children's band once played there on Sunday afternoons; (f) political gatherings at which candidates for national, state, and local offices would appear. President Theodore Roosevelt was photographed speaking in the Plaza around 1912.

According to Mr. Trucks, the care of the Plaza's landscaping has not been regular. The Fairfield Garden Club has four or five times planted "beautiful" flowers. During one city administration many of the shrubs were dug up. Several years ago the city cut off the water to the fountain.

The evidence presented by the City of Fairfield was directed toward showing that it was the plan of the Chamber of Commerce to convert the Plaza into a parking lot. Evidence tending to show the desirability of such changed use in view of traffic conditions and requirements was also received.

At the conclusion of the hearing below, the court found that since the recording of the plat in 1912 by the Corey Land Company (Fairfield Land Company), the Plaza has been used continuously up to the time of the hearing by the City of Fairfield, and by the public, as a public park; that to change the Plaza into an automobile parking lot would be a substantially different use than that for which it was dedicated.

The court held therefore that the plan of the City of Fairfield, as evidenced by the resolution, "to convert the public park known as The Plaza into a parking area for automobiles is contrary to law and therefore prohibited."

In its decree the court set forth the following:

"The City contends that the area involved is a Plaza and not a Park, and that the law as to a plaza is different from that of a park. But the Court is of the opinion and so finds that the designation on the dedicatory plat is not controlling as to the true nature of the area. Such designation is merely the name given to that of a particular public park of the City of Fairfield. In size, development, use, and purposes in dedication, it is a public park."

A "dedication" is a donation or appropriation of property to the public use by the owner. Witherall v. Strane, 265 Ala. 218, 90 So.2d 251.

In placing the map on record the Corey (Fairfield) Land Company, by designating Lot 42 as The Plaza, must have contemplated a dedication of such lot to the use of the public. Manning v. House, 211 Ala. 570, 100 So. 772.

The dedication of Lot 42 (The Plaza) to the public being complete, the public will not lose its interest therein by neglect, or failure to care for the area, no matter how long the neglect continues. City of Florence v. Florence Land and Lumber Co., 204 Ala. 175, 85 So. 516.

In brief counsel for appellant have argued, as they apparently did in the court below, that designating Lot 42 on the filed map or plat as the Plaza did not constitute a dedication of the lot as a "park," and that a "plaza" is not the same as a "park."

In Webster's New International Dictionary, a plaza is defined as, "A public square in a city or town; a market place; an open square."

In City of St. Louis v. Pope, 344 Mo. 479, 126 S.W.2d 1201, may be found a lengthy discussion of the meaning of the word "plaza." In summarizing its lengthy observations concerning plazas, the court wrote:

"The word *plaza* in the Spanish meant a pretentious open space of considerable importance, activity and grandeur faced by the most important public and commercial edifaces—the center of civic activity.

\*　　\*　　\*　　\*　　\*　　\*

"It is not a place where people will go, as to a park for a day or outing, but it is a place where people will gather on patriotic, festive or momentous occasions to be informed or to listen to programs or other entertainment. It is not a park. It is not a square."

The court further observes, however, that in numerous cases the word "plaza" has been interchanged with "park," or "square."

In Reid v. City of Bessemer, 273 Ala. 317, 139 So.2d 592, the question presented was whether the City of Bessemer could use land dedicated as a park for the location of a public school building.

In holding that such use was not consistent with the use of the land as a park, this court quoted the following from 39 Am.Jur., Parks, Squares and Playgrounds, Sec. 2, p. 803:

"The term 'park,' as now commonly understood in this country, means a piece of ground acquired by a city, town, or other public authority, for ornament, and as a place for the resort of the public for recreation and amusement. It is usually laid out in walks, drives, and recreation grounds, so as to afford pleasure to the eye as well as opportunity for open-air recreation."

Sec. 14, Tit. 56, Code of Alabama 1940, provides that:

"The acknowledgment and recording of such plat or map shall be held in law and in equity to be a conveyance in fee simple of such portion of the premises platted as are marked or noted on such plat or map as donated or granted to the public, and the premises intended for any street, alleyway, common, *or other public use,* as shown in such plat or map, shall be held in trust for the uses and purposes intended or set forth in such plat or map." (Italics ours.)

█ Actually, we do not see that it makes any difference whether the area shown on the recorded map or plat be considered a "plaza" or a "park." The contemplated plan to divert its use from that of a "plaza" or a "park" to that of a parking lot would be such a change in use in either case as to be improper.

█ We do not intend by the above observation to be considered as in anywise not in full accord with the lower court's conclusions and adjudication that the area designated as "The Plaza" on the recorded map was in truth and in fact a "park." Its use as a park for well over fifty years furnishes a strong foundation for the court's conclusions. The evidence of the dedication together with the evidence of the use of the area as a park made a case for the trier of fact. Burton v. Johnson, 222 Ala. 685, 134 So. 15.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and MERRILL, JJ., concur.